Thank you, Your Honor. Again, Phil Talmadge here representing Michael Moy. Artist Dale Chihuly had a dirty little secret to be kept at all costs. He told the world at large that he was the sole creator of the paintings that he signed when that was untrue. Physically, he could not and did not create the output of artwork attributed to him. His assistants, like Mr. Moy, actually created the art attributed solely to Chihuly. Moy was the joint author under the Copyright Act and VERA of 285 paintings. The District Court erred when it granted summary judgment on Moy's federal and state claims when there were fact issues that abounded in connection with those claims. Let me ask you a question on that. Yes, Your Honor. On the joint ownership question, you mentioned that this dirty secret that Chihuly had or this illusion, I think you said in the pleadings, that he was the sole creator of this work. He was telling the world that he was the only one involved in this. Doesn't that cut against your argument of joint ownership with respect to at least one of the elements about an objective intent to be together and be a joint authorship? If you have Chihuly out there saying, I am the only one, that seems to undercut a joint authorship under the Copyright Act. I understand that concern, Your Honor, but I think you have to look at it in the context of this culture of secrecy that this artist propagated with all of his assistants. As you know, this proposition about authorship is a question of fact. And particularly in the context of the Copyright Act, these kinds of decisions on authorship, summary judgment is disfavored for good reason. You want to look at all of the factual circumstances that are attended upon the relationship between the parties. And here you had this particular problem with this artist. He propagated this culture of secrecy. He had these assistants who were providing the actual artistic work. He couldn't meet the strict standard that he articulates for the Copyright Act. I mean, he couldn't identify his work. He couldn't identify that he didn't have a shared arrangement with people. All of that was part and parcel of this context of secrecy that you had to consider in looking at the elements that the Al-Muhammad case and Richland have established for evaluating the intent to have a joint authorship arrangement. Why don't you walk through the first two Al-Muhammad factors in particular and give us your take on those because those seem to be the most difficult for you. More than happy to, Judge Brassen. And you start with the issue of control. And again, the context of the relationship here is particularly critical. This was a particularly fluid, collaborative effort on the part of the people involved over a number of years. They had a process to which everybody testified. And there was little dispute that that was what occurred, that there was this fluid, collaborative process. But there was also a problem in that process, which was Mr. Chihuly could not physically perform the work in many instances. He wasn't present in many circumstances. What is your estimate? Based on the record, what is your estimate of how many hours your client spent working on the art? I don't think we have a specific number of hours that was identified, but it's very critical. How many days? Does the record show anything about how many days he spent? It was hundreds of hours because he worked nights and weekends. I mean, in addition to doing contracting work for Mr. Chihuly, he did hundreds of hours of time, weekends and nights, performing the work that we're talking about, as did the other assistants with whom Mr. Chihuly actually settled. So you had a testimony in the record that indicates that Mr. Moy contributed significantly. He controlled his artistic contribution to the artworks at issue, the 285 artworks that he's identified in a number of Chihuly series, that he was a distinct participant and contributor to the art that was involved in those cases. He was not merely copying a style or an overall concept. He was independently contributing, as Piper O'Neill, one of the assistants testified, unique contribution, unique work that was being undertaken.  Let me ask you on that issue. You say he controlled his contribution, but ultimately Chihuly decided whether or not to throw the artwork away or to save it, or even whether or not to accept it and sign it himself, right? I mean, in all those respects, Chihuly controlled. Well, he decided what he wanted to do with the artwork, and certainly that's something that's the case. But in terms of the control test, it's the control of the contribution to the merged joint effort that's at stake under the act. And there's no question that the assistants we're talking about each contributed and controlled their contribution to the artworks that were at issue, as did Mr. Moy, the 285 artworks. He controlled his contribution to those artwork, to those artistic efforts. Very critical in that regard. In terms of the second element of the issue... I have a question about those. I'm sorry, finish up, finish up, and then I'll ask. I was going to say that he did that control, and I was going to turn next to the second point about... Okay, before you turn to the second point, before you turn to the second point, I want to ask you a question about the record. Mr. Moy was asked to... He was shown images of various paintings and asked to identify the ones that he contributed to. And as I read the record, I'm looking at ER 1128, he was unable to do so. Assuming that, A, is that a correct reading of the record, and B, if it is, what does it do to your claim? Well, it's in part correct, Your Honor, but there's the overall... In addition in the record, there's an indication that Mr. Moy specifically identified his contribution to specific series that were the output of the Chihuly studio. And that strict identification of the specific contribution, brushstroke by brushstroke, to a particular painting is not necessary under the act. And in fact, Mr. Chihuly himself couldn't meet the same standard to which he would have the court hold Mr. Moy. He couldn't identify what he did. He couldn't identify the particular projects on which he was involved. He wasn't even present when some of the works were created, and he had others sign his name on them as if he were. So he can't demonstrate the strict standard that we're talking about here. Well, but we're not deciding in this case whether he has a copyright claim. We're deciding whether your client does. Well, we're deciding whether they were joint authors, Your Honor. Right. Well, let me just... I just want to just look at this part of the record. I thought he couldn't identify any particular work in which he had made a contribution. I'm looking at 1128 of the ER. Am I misreading it? As indicated in our brief, he did identify in the record, on the record, that he contributed to a number of the particular series, the Byrne and Pumpkin series in particular. Byrne, because of the nature of the Byrne background that was involved in those paintings and that series of paintings, he contributed to. He testified to that. There was a testimony from Piper O'Neill that he offered. He provided unique contributions on a number of the works that we're talking about in this case. And you had expert testimony that indicated that he, in fact, provided independently copyrightable artistic contributions to the various paintings at issue in the case. So whether he could identify his specific contribution on a specific painting, he said, I can't say that specifically, but I know that upon review of all the 6,000 paintings that we're talking about, more than 6,000 paintings, the 285 that he identified were paintings on which he contributed. That was his testimony on the record. If you turn to the second issue, which is the intent to create a co-authored work, one of the things that I think is very striking in this, a la the non-barking dog that Abraham Lincoln spoke to in the one jury trial, you have the fact that Mr. Chihuly did not seek out Section 201 protection in this case. If he didn't believe that he was engaging in a shared artistic endeavor with his assistants, why then did he not seek 201 protection in which he could have protected himself from these types of claims? He could have, but he wasn't required to do that. He could have done that, but that is not how he arranged his affairs. Nothing required him to do that either. Well, he's not required to, Your Honor, but there's a strong inference that a reasonable jury could have from that, that Mr. Chihuly was very comfortable with the proposition that there was a shared artistic endeavor that was being undertaken here. And that's consistent with his promise of financial compensation to the assistants. I'm going to take care of you. The company is keeping track. And so there's an indication on this record that there was, in fact, an intent to create a joint, you know, a joint authored artistic endeavor here. Does the record show anything about, does the record show anything about, sorry, the Zoom, we end up talking over each other. Yeah, I'm sorry about that, Your Honor. Does the record show anything about whether your client at any interval over these years went to Mr. Chihuly and said, when am I going to get paid for this? In other words, if someone was working with the expectation of payment but was not getting paid, at some point you would expect them to go in and say, where is my monthly or yearly check? But did that happen here? Well, he was consistently reassured by Mr. Chihuly, who was a close friend of his, that everything was going to be fine and he was going to be taken care of. He was paid as he went along for construction-related work. But leave us not lose sight of the proposition. I think I was going to add this in response to your earlier question, Judge Grass. You have in this set of circumstances hundreds of hours of contribution, nights and evenings, made by Mr. Moy for which he was not compensated. He relied on the assurances made to him by Mr. Chihuly, his good friend and drinking buddy, that he was going to be compensated for the work that he contributed to the joint artistic endeavor. But in his work as essentially, I guess, a general contractor for Mr. Chihuly, was he paid by the hour? At times, yes, and in times it was bartered. There were things given to him in exchange for work that he performed. So there was compensation sometimes not on an hourly basis. It was a very, again, fluid and collaborative artistic process, fluid process in terms of the compensation as well. The last point is the question about whether there was, you know, there was a joint appeal of the artistic effort that was undertaken. And that the district court specifically found there was a question of fact regarding. Clearly the contribution of Mr. Moy and the other assistants to these artworks was essential to their integrated final result. And the district court so concluded. And that's, I think, all three of the, all Muhammad factors having been established, at least questions of fact associated with all of them, should have foreclosed some re-judgment by the district court. Let me ask you one other question. It looks like to me, let's assume for the sake of argument, your client did make some valuable contributions to the artwork. How does that rise to the level of co-authorship of joint work? Because I will have a case seems to suggest that just making valuable contributions is just not enough in and of itself. Agreed, Your Honor. But you have two distinguished experts who both testified that Mr. Moy offered independent artistic contributions to the works that are at issue. And that those independent works were copyrightable. This is not a circumstance where somebody just threw something into the pot. It's not like the movie set that was talked about in all Muhammad, you know, that was the Malcolm X film. This was a circumstance in all of the people on a film set being contributors. That's not the case here. You had independently copyrightable artistic efforts that were provided by Mr. Moy to which experts testified. That's enough to get to a reasonable jury. Can I ask you about that last statement? Because I want to be clear on this. You're not applying for a copyright or making a copyright infringement claim, correct? No. It's an argument about joint authorship, Your Honor. Yeah, it's an argument about joint authorship. So let's assume joint authorship. What does that entitle you to from Chihuly Studios? Well, I think the request was for declaratory relief as to what the precise financial consequences of that would be. Well, that's my question. You were paid. So isn't your joint authorship claim, at least as far as it seeks damages, dependent on the promissory estoppel claim? No, because he was not, in fact, paid for the artistic work, Your Honor. He was paid for certain contractor work, but he's never been paid penny one for the hundreds of hours of evenings and weekend work that was done in connection with copyright. His position is that all the contributions he made, allegedly made to the art, were done for free. Well, that's the position that the Chihuly people take. He did not do that. I mean, he's never been paid anything. Well, I thought the position they took was that he was a contract employee and they let him do this as part of his contract work. I don't think that's the case. I don't think there's been any indication that he was compensated in any way for that artistic contribution to the works. Okay. I understand your position. Yeah. He didn't get penny one. Okay. Just a quick touch on the state promissory estoppel. Well, you've exceeded your time limit, so why don't you wrap up and then we'll see if we can give you a minute for rebuttal. Thank you, Your Honor. And the wrap-up is Washington law permits enforcement of contracts where you have open price terms, where you have cases that indicate that there's not a specific price that's attributed to them. The notion that you promised to take care of someone financially right now is sufficiently enforceable under Washington promissory estoppel law to be enforceable. And the trial court here doubled down on its error in connection with the Copyright Act and promissory estoppel by imposing $1.6 million in attorney fees against Mr. Moy when there were objectively reasonable circumstances for him presenting his claim, particularly given the fact that other assistants had settled with Chihuly for the very same artistic process. We ask the court to reverse both as to the summary judgment order and as to the fee award. Unless anybody has any other questions for Mr. Talmadge. Mr. Schneider. Yes. Good. Good afternoon, Judge Hurwitz. Good morning, Judge Bress. And good afternoon, Judge Corker. This case involves the straightforward application of settled Ninth Circuit law and the United States Copyright Act to a set of facts presented in the evidentiary record before the district court. That makes the outcome below not just appropriate, but we believe compelled. It should be affirmed. As an initial matter, plaintiff, excuse me, appellant Moy would like to skip a threshold issue in the case. And that is what specific works are we talking about here? I know of no case where a claim for joint work status for joint authorship went forward when the applicant could not tell us what specific works of art were at issue. So I want to press on that. I mean, I think I understand your arguments under the al-Muhammad factors. But, you know, if you and I were to write a book together and I couldn't remember the sections I wrote, then maybe that would be significant. But here, he's not an artist. And he's basically saying I worked on hundreds of these paintings. And so why is it really fair to penalize him for not being able to identify specific ones when perhaps from his untrained eye he can't necessarily distinguish between them? Well, I'm not suggesting that he be penalized. I am suggesting that the Ninth Circuit test can only be applied with respect to specific works and the specific contributions independently copyrightable under the al-Muhammad case. I want to focus on that for a second because that was the focus of my question to Mr. Talmadge. Is it really true that he couldn't identify any work that he made a contribution to? It is. And if you look at the record, it's apparent. He had 21 months between his demand letter and when he came up with his list of, you know, a couple of hundred images. Over that period of time, we supplied him with the entire portfolio of images to look at. We supplied him with the dates of the registration. And ultimately, what he said was exactly this. In his third supplemental response, the interrogatory served the previous August. Below are the works I've identified in good faith, to the best of my recollection, because they were created on years when I was in the studio, when I was present. He makes the leap that his presence on those dates, which are not even specified, assumes that he had a contribution which is suitable under the Copyright Act to pursue joint author status. That is the record. And it took a long time for him to get that far. And our view is that that's not quite far enough. Let me ask me and I know I know I'm changing the facts. So let's assume an artist said. I worked on everything that was going on in the studio on during this time period. I today I can't recall what they were, but I worked on everything that was there. And and he then made whatever other showings were necessary to show show joint ownership. Would we throw out the claim because he couldn't testify with precision that he made a contribution to this particular piece of art? I don't know that you would. But in this case, Mr. Moy was not there every day during those years. He was only there some days. The record is very clear, and I believe your honor, Judge Hurwitz. I think you cited the right excerpts beginning at 1082 through 1172. By my count, Mr. Moy said more than 40 times. I can't tell you. I'm not certain. I'm unable to identify it. I need the dates in order to be more more specific. I never sat down with anyone to try to figure out which paintings I did. That's at 1090. And I think very revealingly, he said the following. I went to the Garden and Glass Museum, the Chihuly Museum up at the Seattle Center, and I went with my lawyer. And the purpose was to identify any of the paintings or drawings in which I participated. Some looked familiar. He said at 1093. The attorney along with me wanted me to be specific at ER 1094. I couldn't tell her which ones I painted. I told my attorney. I guess the question, Mr. Schneider, to me is, this testimony is clearly relevant. It's relevant to both of the first two elements of the practice. But is it dispositive? That's the part I'm not sure about. It may not make a difference. But analytically, I'm not sure that it's conclusive, at least here, that he couldn't identify them. I understand. And I think the answer to your question is it was not dispositive necessarily for the district court, because Judge Lassnick went on to say, let's assume he could identify them. That's not the end of the inquiry. It's the beginning of the analysis. And there he goes to the factors under Al Muhammad. But let me let me add one more fact. Let's stay with Judge Bress's question, because your answer suggests to me that you do think it's dispositive. The judge said, let's assume he could identify them. Now let me tell you why he'd lose anyway. So what's what? What's your answer to Judge Bress's question? Let's assume for the record, assume that for the moment that this record establishes that he never could identify a particular work of art. Would that be dispositive? I may have misunderstood Judge Bress, but I thought he said, would this court throw it out? To me, it's dispositive to this court. I don't. Well, I don't. OK, well, I'm going to ask you to predict what we're going to do. Is the inability to identify the particular works of art in which he claims co-authorship dispositive of his claim of co-authorship? Not necessarily. And that's why it's important to understand that Judge Lassnick went on to go through the analysis for joint work. But before he did that, I'd also like to point out that Mr. Moy started his complaint, started his demand by saying that I have 35 corroborating witnesses. By the time it got to Judge Lassnick, he had zero. He places some reliance on Piper O'Neill. And then the brief says she came in and saw when she brought dinner to her husband that he and Mr. Moy were painting. But that testimony, that testimony did not pertain to any specific work of art. We don't know what they were painting. If it's any in this list that he's given you. So was he getting paid for the hours he spent doing the painting as part of his contract? He was not. No, there's no evidence that he was. He was paid for his handyman work, for his roofing work, for his construction work. There's no dispute about that. So I don't want to mislead you, obviously. But so then what's your client, what does the record show about from your client's perspective? Why was he there as a friend? Well, he started off saying it was fun. Billy O'Neill invited me. I thought it was fun, so I went. And that was the initial period of time that he spent there. If I may, let me just finish with Piper O'Neill. If you go to her deposition at ER 431, she was deposed. She didn't give a declaration. There were no declarations by any of these 35 witnesses. She was deposed, and she's the only fact witness who was deposed. And what she said was this. I can identify by looking at the images before me in that portfolio. I can identify what I did and which paintings I participated in, but I can't tell you a single one that Mr. Moy did. In fact, she answered that question 38 times between ER 435 and ER 444. In their brief, Moy says the following. Piper O'Neill said that she went to the studio to drop off dinner, and they were painting. No reference to whether it was a work at issue in this case. And importantly, that's not really what the evidence is in the excerpt of record. It's cited as 1466. Actually, it's on 1463. But when asked in her deposition whether she could say they were painting any work of art that is claimed by Mr. Moy, she said the following. I can't say for certain. I just don't remember what they were painting. Let me ask you the question I asked before differently, because now I understand your response. I suppose it would be fine if Mr. Moy couldn't identify any particular work, but another witness could. So my question was meant to be, is the inability, is the lack of evidence in this record, assuming that it's not there, that Mr. Moy contributed to any particular piece of work dispositive of his claims? I think it could be, but I would for purposes of argument, I would say it's not necessarily the case. And that's why it's important to understand that Judge Lasnik also went through the Al-Muhammad factors, which are the prevailing test for joint authorship, joint work in the Ninth Circuit. And the cases are very consistent within the Ninth Circuit and, in fact, elsewhere. The test is control, whether there is what the what the case is called superintending, superintending work performed by the artist. Here, there's no doubt that the Chihuly Studio and Dale Chihuly exercised that ability. They made the decision what to keep and what to discard, what to sell and what to loan and what to exhibit and what to license. Mr. Moy had absolutely no control on that. And Mr. Chihuly had the opportunity to take or leave any contributions that Moy or any other employees who were actually hired as assistants, what they may have contributed in the way of background color or drops or bits of paint. So if you look at control, it's not just an absence of control with respect to Mr. Moy. It's overwhelming that he had none and Chihuly had it all with respect to intent. It's a control over me. Is it control over creation or control over the end work? I think it's both. It's it's it's well. Yeah. Mr. Moy says I think he says I don't know if he has any evidence of it, but he says I was allowed to create parts of this work and I wasn't told what to do. I did it myself. It was independently my stuff. And so I controlled what I put in. It may well be that Mr. Chihuly Studio controlled the work of art once it was completed. But assuming that there's evidence that he controlled what he put in, why wouldn't that meet the second part of the test? Because, you know, well, you know, Mohammed, there's no doubt that that plaintiff made contributions. And it wasn't just setting up the set, as counsel has described. It involved directing certain scenes. It involves writing a bit of script. It involved involved consulting on religious and historical facts to make sure that the production was accurate in those regards. What the court said was a contribution is not necessarily joint authorship. And here, Chihuly had the ability to take or leave anything that any of the people participating or collaborating put on the canvas, put on the paper, put on the painting. That is control. With respect to the second element, intent, it's important to recognize that the word mutual intent is actually in the statute 17 U.S.C. 201. It's got to be mutual. And here there's not just an absence of mutuality. There's testimony from Mr. Moy that Dale Chihuly never said anything that suggested that it was going to be a joint work, a joint authorship. Mr. Scheider, I wanted to ask you about just because your time is running short about the attorneys award. Your friend on the other side says, look, at the very least, it's not a frivolous case because there were other assistants in Moy's position that entered settlements with Mr. Chihuly. What's your answer on that? My short answer is it's not an argument that was raised in the district court. In fact, in opposition to the request for fees, Mr. Moy said the following. This outcome was inevitable. They should have made the motion in the first few months instead of the last few weeks after discovery closed. He also says that if I had to do it myself, I would never have filed this complaint. You may, this is a bit of an unusual situation, but Moy accomplished service of process. He did not file the complaint in state court. We have 30 days to remove it after service because in Washington, unlike some states, I think California included, commencement of an action in Washington is determined by filing or service, not both. Judge Lasnik noted this in footnote one in his order on attorney's fees. We filed his complaint. We paid his filing fee because we only had 30 days to remove and after service and we were up against that time clock. But Mr. Moy says in opposition to the award of fees or the motion for fees is, boy, I never would have filed this. Mr. Schneider filed it. It's not my fault that it got filed. How is that consistent with him saying it was anything other than an unreasonable effort to leverage a settlement? It was, as Judge Lasnik found with abundant evidence. An effort to try to leverage a settlement without having 35 corroborating witnesses, without having the video that he said in his demand letter he had, which would prove his claims without any documents that he said he had. So my answer to your question, I guess it's not as short as I hoped it to be. Mr. Moy himself basically acknowledges without saying it out loud. This was frivolous and never would have filed it. The outcome was inevitable on summary judgment. And on that point, too, did he ever attack the reasonableness of the attorney's fees at all? Did he challenge the hours or the rate? Short answer is no. Short answer is no. He did not challenge the rates. He did not challenge the hours. We made some adjustments in the application based on redundancy, based on work that had been spent on things other than the copyright claims. We did that work for him, in effect, but he did not raise either basis for objecting to the fees. And one other point on that is that I think the district court also disputed all the time that was invested with respect to the defense of the promissory estoppel claim that you all attributed research to and the work with regard to, as well as any of the other state law claims. Is that right? The only only fee that was awarded was with regard to work on the copyright case. That is correct. But to be to be absolutely precise, we we took that out ourselves. And Judge Lassnick, of course, adopted the net result of that. So we took it out. He didn't have to exclude it. I know I'm over my time, but I'd like to answer a couple of questions that that the panel has asked of opposing counsel. One is this. It's the same question I believe that Judge Lassnick asked me at summary judgment, summary judgment hearing. Doesn't he deserve something? And the answer to that question is not on a claim of promissory estoppel. The burden is just too great. It has to be a specific, indefinite promise that doesn't exist here. We talk about, well, the price wasn't stated. No terms were stated. And Moy said, it's up to Dale. He could have given me whatever he decided was fair. So when Judge Lassnick asked me, what about that quantum Merowith claim? The answer was this. Al Mohamed had a quantum Merowith cause of action. Michael Moy did not. He was swinging for the fences. He wasn't looking for some calculation of hours spent at a reasonable rate. He went for the big ticket item. A co-ownership he neglected to pursue a quantum Merowith case. And the answer to another question you asked earlier is Mr. Moy admitted in his deposition that he has absolutely no ability to recapture how much time he spent, how much effort he put in, or what the reasonable rate would be for his time. So not only is there no cause of action, there's no evidence from which a jury could even hazard a guess. Thank you, Mr. Schneider. We let Mr. Schneider go over a couple of minutes. So we'll give you a couple of minutes, Mr. Talmadge. Thank you, Your Honor. I appreciate that. A couple of points to emphasize. First, Mr. Moy identified 285 artworks. So he did identify artworks that were at issue. So that is before the court, and that was a matter of record. He examined more than 6,900 artworks and identified precisely those 285. So there was testimony to that effect. You know, the factor that jumps out at you in this promissory estoppel in Washington, the fifth element is injustice. You know, you have in this particular set of circumstances hundreds of hours of time. You have the weekend and evening work to which Mr. Moy testified. And the argument from the Chihuly standpoint is he gets nothing for that. Walk away. You get not a dime. That's pretty remarkable. The Washington law on promissory estoppel recognizes that you can have basically a reasonable compensation amount as a promise, a promise to act or to forbear under the Howard case and cases that arise under the UCC. And the bottom line here is, you know, there is no need to identify precisely each of the works that we're talking about. The question is, was there a creative contribution? That is the question of shared responsibility. There was shared creative responsibility over a period from 1999 to 2014, 15 years of time that was involved. So, you know, the ability to identify the precise brush stroke on a particular painting among thousands of paintings accomplished over a period of 15 years is just not there. But Mr. Moy testified sufficiently to document the fact that there were 285 paintings to which he contributed. Mr. Schneider did not deny the fluid collaborative process that was involved here, did not deny that Mr. Chihuly, in many instances, physically did not participate in any way, shape, or form. How could he exert control under circumstances when he wasn't even present? The artwork was created by the assistants like Mr. Moy and the others with whom Chihuly settled to try to keep them silent from testifying to the fact that that was exactly what they were doing. There were fact issues that abounded here on the Copyright Act and VERA. The district court erred in granting summary judgment. The district court erred in imposing $1.6 million in attorney fees, about which Moy did argue in the district court was excessive, $1.6 million for a summary judgment matter. The court should reverse the attorney award as well. Thank you. Thank you, Mr. Counsel. Your Honor, may I have 10 seconds? No, you may not. Unless you want to correct a misstatement that you made. Well, I want to give you a corrective misstatement I made on whether it's dispositive to identify the work. My answer is one second. That's a legal matter. We can figure that out. You've used your time. Thank both counsel for their arguments and briefing. This case will be submitted. Thank you, Your Honor. And we'll be in recess for the day. This court for this session stands adjourned.
judges: Hurwitz, Bress, Corker